Elizabeth M. Petch v. Commissioner.
Petch v. Commissioner
Docket No. 21816.
United States Tax Court
1950 Tax Ct. Memo LEXIS 89; 9 T.C.M. (CCH) 844; T.C.M. (RIA) 50230; September 28, 1950
*89 Petitioner entered into partnership agreements with her husband and a third individual for the conduct of two different businesses during the taxable year 1943. She now contends that she was not a bona fide partner in those two businesses during the year in question. Since the record shows that the parties intended to be partners for the purpose of conducting the businesses involved, it is held that petitioner was a partner of both businesses during the year in question. Arthur L. Evely, Esq., for the petitioner. Cyrus A. Neuman, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined a deficiency in petitioner's income and victory tax for the year ended December 31, 1943, in the amount of $3,249.70. [1] The petitioner claims an overpayment for that year. Certain adjustments made by the respondent are not contested. The question presented is whether the Commissioner erred in determining that petitioner is taxable in the year 1943 upon a distributive share of the net income of the partnerships known as Fiehn Manufacturing Company and Charles L. Petch Tool & Die Company. *90 Findings of Fact During the taxable year involved petitioner resided in Mt. Clemens, Michigan. She filed her income tax returns for the year in question with the collector of internal revenue for the district of Michigan at Detroit. Prior to the year 1943 and during that year petitioner was married to Charles L. Petch. They were divorced in 1947. Petitioner is the mother of the following children: Betty Ruth born December 27, 1932, Dolores Anne born July 14, 1936, Marcia Jean born September 12, 1941, and Charles Arthur born May 30, 1943. During the year 1942 petitioner's former husband operated a tool and die manufacturing business as an individual proprietorship in Mt. Clemens, Michigan. Fiehn Manufacturing Company partnership. Guenther Fiehn, an acquaintance of Charles, operated a machine shop in the fall of 1942 as an individual proprietorship in Mt. Clemens. At that time Fiehn needed working capital in his business and asked Charles to become a partner with him. Charles declined but proposed that petitioner become a partner in his stead. A partnership agreement was then executed between petitioner and Fiehn on November 12, 1942. Concurrently with the partnership agreement, *91 a certificate of limited partnership was executed by petitioner and Fiehn. The petitioner contributed $5,000 to this partnership. She obtained that amount from Charles through a loan which she agreed to repay. At the time of the formation of this partnership petitioner had neither money nor other separate property. Fiehn was a general partner of the partnership and by the terms of the partnership agreement was to manage the business and receive a salary not exceeding $100 per week. The profits of the business were to be divided equally. Throughout the year 1943 petitioner received monthly checks from Fiehn. The amount of these checks is not disclosed by the record. On March 14, 1944, petitioner received a check from Fiehn in the amount of $5,000. On June 14, 1944, Fiehn Manufacturing Company partnership was dissolved. A certificate of discontinuance of the co-partnership was executed and filed in Macomb County, Michigan. In her 1943 separate income tax return petitioner reported partnership income from Fiehn Manufacturing Company in the amount of $11,883.30. In her 1944 return petitioner reported income from Fiehn Manufacturing Company partnership in the amount of $2,287.96. *92 On March 29, 1945, Fiehn executed a promissory note to petitioner in the amount of $6,470.64 to be paid at the rate of $400 per month commencing May 1, 1945. That note was secured by a chattel mortgage on the assets of Fiehn Manufacturing Company. The first $400 payment was made on May 22, 1945, and thereafter monthly payments were made to petitioner by Fiehn totaling $6,400. In addition petitioner received from Fiehn a check in the amount of $5,000 dated April 3, 1945. The total of all ascertained payments received by petitioner from Fiehn is $16,400. None of this money was used by petitioner for household expenses. The facts disclose the following disposition of those checks totaling $16,400. The only checks upon which Charles' endorsement appears are nine of the $400 checks. In addition, two $400 checks bear the endorsement of Erma Herr, Charles' secretary. Those eleven checks totaling $4,400 were the only checks Charles received. They were given to Charles in repayment of the $5,000 which he advanced as a loan to petitioner when she became a partner of Fiehn Manufacturing Company. All of the remainder of the checks carry the endorsement of petitioner. Charles occasionally *93 visited the plant of Fiehn Manufacturing Company for the purpose of checking on deliveries of subcontracts which that company performed for the Charles L. Petch Tool & Die Company. He also had made such visits for the same purpose prior to the formation of the partnership between Fiehn and petitioner. Charles exercised no control whatsoever over the operation of the business of Fiehn. Petitioner and Fiehn intended to and did enter into a bona fide partnership for the conduct of the business in question during the year 1943. Charles L. Petch Tool & Die Company partnership. Prior to January 1, 1943, petitioner and Charles discussed the formation of a partnership for the purpose of conducting Charles' tool and die business. The operation of that company consisted of subcontract work, machine work, and general tool and die operation. The business was located at the rear of the home of petitioner and her husband in Mt. Clemens. On January 1, 1943, petitioner and her husband formed a partnership under the name of Charles L. Petch Tool & Die Company. A certificate of co-partnership was executed and filed in Macomb County, Michigan. All the necessary reports indicating a partnership *94 status between petitioner and Charles were filed with the proper governmental authorities. Charles made a gift to petitioner of a onehalf interest in the assets of the business. Concurrently with the execution of the certificate of co-partnership, a partnership bank account was opened and petitioner was authorized to sign checks on behalf of the partnership. A capital account for each of the partners was set up on the books of the company indicating the ownership by petitioner of a one-half interest in the business. This partnership existed for a period of three months. During that time petitioner signed over 200 checks on behalf of the partnership. Some of these were signed in the office and some at home. Some of the checks were signed on occasions when Charles was out of the city. Petitioner also answered business phone calls at various times both at home and at the office. Petitioner participated and shared in the management of that business. She attended meetings with Charles and their attorney at which time such subjects as War Production Board orders, war priorities and wage controls were discussed. Petitioner took an active interest in all such discussions. The attorney for *95 the company accorded the same weight and dignity to the decisions and viewpoint of petitioner as he did to those of Charles. A partnership return of income was filed for the existence of the partnership from January 1, 1943, to March 31, 1943. Petitioner reported on her 1943 income tax return the amount of $15,302.55 as income from that partnership. On April 6, 1943, a corporation was formed to succeed the partnership and the profits of the partnership together with its capital were transferred to the corporation by petitioner and Charles. Charles received 60 per cent of the corporation's capital stock while petitioner received 40 per cent, or 2,500 shares. Petitioner was elected secretary of the corporation. She desired to be an officer and was interested in the performance of her duties as such. In the minutes of the first meeting of the corporation, attested by petitioner as secretary, the following language appears: "WHEREAS, Charles L. Petch and Elizabeth M. Petch were previously and are now co-partners and owners as such, of the business formerly known as Charles L. Petch Tool & Die Co., and they offer to sell and transfer to this corporation * * * the following described *96 property, to-wit:" * * * On the 1943 income tax return of the corporation petitioner's signature appears as secretary below an affidavit form sworn to before a notary. The return lists her annual salary as $25,000. During the year succeeding 1943 petitioner received monthly checks from the corporation representing either salary or dividends, or both. In December 1947 Charles and petitioner were divorced and Charles purchased petitioner's stock for $37,000. Petitioner has received $12,000 of this amount and has a contractual right to receive the balance in the future. During the year 1943 petitioner and her husband intended to and did enter into a bona fide partnership for the conduct of the business in question. Opinion HILL, Judge: This case presents the reverse of the situation usually found in family partnership cases. Here the petitioner is maintaining that she was not a partner for Federal tax purposes in the businesses involved during the year 1943 and the respondent is contending that she was. We believe the record sustains the respondent's determination that petitioner entered into bona fide partnerships when she executed the agreements evidencing her status *97 as a limited partner of Fiehn Manufacturing Company, and her status of a general partner of the Charles L. Petch Tool & Die Company. From November 12, 1942, when the articles of co-partnership of Fiehn Manufacturing Company were executed, petitioner received and retained almost all of her share of the profits from its activities. She exercised, so far as the record shows, complete control over these sums of money, the only amounts which her husband received being the repayment of $4,400 on his loan to her of $5,000. The documentary evidence shows that the other checks totaling in all $12,000 were endorsed by petitioner and that petitioner's former husband never received any of the remainder of the payments from Fiehn to petitioner. Petitioner herself testified that none of these sums received from Fiehn were used for household purposes. Moreover, petitioner's former husband exercised no control over the activities of Fiehn Manufacturing Company. His occasional visits to the plant were solely for the purpose of determining why there was a delay in shipments under contracts which were being performed for Charles L. Petch Tool & Die Company by Fiehn. Such work had been done in the *98 past for Charles' business by Fiehn and he had formerly visited the plant for straightening out any delays. It is thus clear that Charles exercised no dominion or control over either the activities of Fiehn Manufacturing Company or the distributive share of the profits which petitioner received therefrom. We therefore believe that those factors, together with others, such as the agreement, the relationship of the parties and the capital contribution of petitioner show that she in good faith intended to join with Fiehn in the conduct of the enterprise. . Likewise, the facts show that petitioner was a partner for tax purposes of Charles L. Petch Tool & Die Company. In the fall of 1942 petitioner and her former husband, upon the advice of an attorney, formed a partnership. The partnership agreement was executed on January 1, 1943. All the necessary formal papers were filed with the various appropriate governmental agencies. At the time of the formation of the partnership it was the intention of Charles that petitioner have a substantial share in the management of the business and assume certain other duties. The record is definite *99 that petitioner performed many services for the partnership. She signed checks, answered business calls both at home and in the office, and participated in business meetings with her former husband and the attorney for the partnership during which management problems were discussed and acted upon. At those meetings such important matters as War Production Board orders, war priorities and wage controls were discussed. The attorney testified that petitioner took an active part in all such discussions. At the time that the partnership was dissolved petitioner reported as income from the partnership an amount of $15,302.55. That petitioner was a real part of the partnership is supported by the fact that she continued to participate in the affairs of the corporation formed on April 6, 1943. She received 40 per cent of the corporation's corporate stock and was elected to the office of secretary. When petitioner and her husband were divorced in 1947, her former husband purchased her share of the stock for $37,000. During the years prior to the divorce petitioner was paid a salary and received dividend payments from the corporation. The record fails to support the petitioner's contention *100 that she was so dominated by her husband as to render nontaxable to her full distributive share of the profits from partnerships in question. See August 17, 1950). We hold in view of the above facts, as respondent contends, that petitioner and Charles acting in good faith intended to join together in the conduct of the enterprise in question. The recent case of (June 9, 1950) is clearly distinguishable on the facts. It follows that respondent's determination must be sustained. Decision will be entered under Rule 50. Footnotes
1. A deficiency in petitioner's income tax in the amount of $425.07 was determined as to the year ended December 31, 1945. The petitioner, however, did not assign any error as to such determination.↩